**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| GABRIELE COTSON AND ROBERT LEWIS, JR., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACIMA DIGITAL, LLC.<br><br>Defendant. | CIVIL ACTION FILE NO. 4:25-cv-726<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Gabriele Cotson ("Plaintiff Cotson") and Robert Lewis, Jr. ("Plaintiff Lewis") individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of their counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' id. § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' id. § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations

was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . Private suits can seek either monetary or injunctive relief. *Id.* . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Through its enactment of the TCPA, Congress also sought to protect consumers from intrusive and unwanted robocalls and text messages that invade privacy and disrupt daily life. *See Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023); *see also Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (noting TCPA's aim to curb "abusive telemarketing practices").

4. This cause of action also involves the Defendant's concurrent violations of the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

5. As alleged herein, Defendant engaged in a pattern of unlawful telemarketing by targeting Plaintiffs and the proposed "Classes" (defined below) with unsolicited calls and texts, causing widespread annoyance and harm, in violation of the TCPA and the FTSA including by:

a. using an automated telephone system as defined in 47 U.S.C. § 227(a)(1) ("ATDS");

b. using an automated system for the selection and dialing of telephone numbers in violation of Fla. Stat. § 501.059(8)(a);

c. contacting numbers registered on the National Do Not Call Registry ("National DNC") in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c);

d. contacting numbers registered on the Florida Do Not Call list maintained by the Department of Agriculture and Consumer Services ("Florida DNC"), in violation of Fla. Stat. § 501.059(4); and

e. failing to maintain the "minimum standards" for statutorily required "procedures for maintaining a list of persons who request not to receive such calls," pursuant to 47 C.F.R. § 64.1200(d);

## PARTIES

6. Plaintiff Cotson is a natural person residing in Lee County, Florida.

7. Plaintiff Lewis is a natural person residing in Fulton County, Georgia.

8. Defendant is a limited liability company with its legal registered office located in Plano, Collin County, Texas which is within this District.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction over the TCPA claim pursuant to 28 U.S.C. § 1331 as those claims arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. This Court has supplemental subject matter jurisdiction over Plaintiff's FTSA claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative facts as the TCPA claims and are so related that they form part of the same case or controversy.

10. This Court has general jurisdiction over Defendant because the company is based in this district.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant is located in this district and sent the calls from this District.

## TCPA BACKGROUND

12. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

13. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

17. The TCPA applies equally to unsolicited text messages, which cause identical privacy harms as calls. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA]"); *Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023) ((Through its enactment of the TCPA, Congress "targeted unwanted text messages (as well as unwanted phone messages)."). Violations of the TCPA cause concrete harm like invasion of privacy and annoyance, which Congress deemed actionable without additional injury. *See Drazen v. Pinto, 74 F.4th 1336, 1346 (11th Cir. 2023) ("[W]e hold that the receipt of an unwanted text message causes a concrete injury[.]"); Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (citing *Spokeo*, 578 U.S. at 341).

18. The TCPA prohibits initiating any call, other than for emergency purposes or with prior express consent, using an ATDS or an artificial or prerecorded voice to a cellular telephone number. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). An ATDS is defined as equipment with the capacity to store or produce numbers using a random or sequential number generator and dial them. 47 U.S.C. § 227(a)(1); *see Facebook, Inc. v. Duguid*, 592 U.S. 395, 405 (2021).

19. The TCPA further mandates that telemarketers maintain procedures for honoring do-not-call requests, including a written policy and training, with violations actionable if two or

more telephone solicitations are made after a request to stop. 47 C.F.R. § 64.1200(d); 47 U.S.C. § 227(c)(5). Cellular numbers registered on the DNC are presumed residential. *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14039 (2003).

20. Telemarketing calls require prior express written consent, defined as "an agreement, in writing, that bears the signature of the person called or texted that clearly and conspicuously authorizes no more than one identified seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice." 47 C.F.R. § 64.1200(f)(9). A called party may revoke prior express consent to receive calls or text messages by using "any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender." 47 C.F.R. § 64.1200(a)(10).

21. The FCC has also made clear that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

22. The TCPA provides statutory damages of $500 per violation, trebled to $1,500 for willful or knowing violations, and injunctive relief to halt ongoing misconduct. 47 U.S.C. § 227(b)(3), (c)(5).

## FTSA BACKGROUND

23. The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, complements the TCPA by protecting Florida residents from intrusive telemarketing calls and text messages that solicit consumer goods or services. The FTSA aims to safeguard privacy and prevent harassment through unsolicited "telephonic sales calls," defined as calls, texts, or voicemails, for selling, extending credit, or gathering information for such purposes. Fla. Stat. § 501.059(1)(j). The FTSA applies to telemarketers that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida.

24. The FTSA prohibits unsolicited telephonic sales calls and texts using an automated system for number selection or dialing, or a recorded message, without prior express written consent. Fla. Stat. § 501.059(8)(a). The FTSA defines "prior express written consent" as follows:

> (g) "Prior express written consent" means a written agreement that:
>
> 1. Bears the signature of the called party;
>
> 2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;
>
> 3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and
>
> 4. Includes a clear and conspicuous disclosure informing the called party that:
>
> (i) By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

> b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
> Fla. Stat. § 501.059(1)(g).

25. The FTSA also bars telephonic sales calls to numbers on the Florida DNC, maintained by the Department of Agriculture and Consumer Services, without consent. Fla. Stat. § 501.059(4).

26. The FTSA also mandates that telephonic sales calls and text messages display a valid telephone number capable of receiving calls, connecting to the solicitor or seller's customer service during business hours. Fla. Stat. § 501.059(8)(b). This applies to all telephonic sales calls, regardless of consent, ensuring transparency and accountability. Violations occur when displayed numbers are non-functional or fail to connect, causing harm like confusion and inability to opt out.

27. The FTSA expressly applies to a "telephone call, text message, or voicemail." Fla. Stat. § 501.059(1)(j).

28. The FTSA provides liquidated damages of $500 per violation, trebled to $1,500 for willful or knowing violations and injunctive relief. Fla. Stat. § 501.059(10), (11)(a).

## FACTUAL ALLEGATIONS

Plaintiff Cotson

29. Plaintiff Cotson is the subscriber and customary user of her cellular telephone number (239) XXX-XXXX.

30. Plaintiff Cotson uses telephone number (239) XXX-XXXX as her personal residential number.

31. Plaintiff Cotson does not use telephone number (239) XXX-XXXX for business or commercial purposes.

32. Plaintiff Cotson registered her number on the National Do Not Call Registry on February 4, 2023, at least thirty days prior to receiving the calls at issue.

33. As a result, Plaintiff's number was included on the Florida DNC list maintained by the Florida Department of Agriculture and Consumer services which, upon information and belief, included Plaintiff's number in the then-quarterly listing published by the department at all relevant times herein.

34. Plaintiff Cotson does not have a landline number in her home or any other telephone number.

35. Plaintiff Cotson uses her cellular phone number for personal use as one would use a landline telephone number in a home.

36. Plaintiff Cotson uses her cellular phone number primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes.

37. Plaintiff Cotson personally pays for her cell phone plan; she is not reimbursed by any business.

38. Plaintiff Cotson received at least fifteen calls from Defendant.

39. All of the calls were autodialed from (239) 939-9989.

40. Plaintiff Cotson rejected the first five calls from Defendant which were made on the following dates: June 22, June 29, July 6, July 13 and July 23, 2024.

41. Following these calls, Plaintiff Coston received another call on August 20, 2024.

42. Plaintiff Costson answered the call and informed Defendant not to call her again and stated she was not interested.

43. Despite that request, Plaintiff Costson received three more calls from Defendant on September 6, September 17 and September 24, 2024.

44. Again, Plaintiff Cotson answered the calls and during each one told Defendant not to call her again and stated she was not interested in what Defendant was marketing.

45. Disregarding her request, Defendant called Plaintiff Cotson again on October 28, 2024.

46. Plaintiff Cotson rejected the call.

47. Plaintiff Cotson then received an additional two calls on October 30 and December 13, 2024.

48. Plaintiff Cotson answered the calls and again repeated that she did not want to be contacted again.

49. Defendant still did not listen and continued to call Plaintiff Cotson.

50. On December 23, 2024 and January 21, 2025, Defendant left voicemails for Plaintiff Cotson promoting their services.

51. Then on January 25, 2025, Defendant called Plaintiff Cotson again and she reiterated she did not want to be contacted.

52. Plaintiff Cotson never gave prior express written consent, or prior express permission or invitation to receive calls from Defendant.

53. The purpose of each call was to promote or encourage the purchase of Defendant's goods or services off offering lease-to-own platform services.

54. The following facts strongly suggest that Defendant used an automated system to initiate its solicitations to Plaintiff Cotson: (1) Plaintiff never transacted business with Defendant; (2) Plaintiff never provided their telephone number to Defendant; (3) Plaintiff heard a delay before any message or voice; and (4) the calls used the same or similar generic and impersonal message designed for *en masse* transmission

55. Plaintiff Cotson orally requested that Defendant cease further calls.

56. Based on information and belief, Defendant maintains records of these interactions.

57. Despite Plaintiff's requests to stop, Defendant continued to initiate unsolicited telemarketing solicitations telemarketing solicitations to Plaintiff's phone.

58. Given the capabilities of modern technology Defendant has the ability to immediately comply with do-not-call requests.

59. By failing immediately record and honor Plaintiff's do-not-call request and continuing to initiate telemarketing calls after that request, Defendant failed to honor Plaintiff's do-not-call request "within a reasonable time." *See Lourie v. Papa John's Int'l, Inc.*, No. 1:23-CV-4320-MHC, 2024 U.S. Dist. LEXIS 119679, at *9-10 (N.D. Ga. June 25, 2024) ("Because the Court must accept as true [plaintiff's] allegation that 'Defendant has the capability of immediately complying with Plaintiff's [do-not-call] request,' at this stage of the dispute, the Court must infer that Defendant could have immediately complied with the request prior to the transmittal of the two telemarketing text messages in the week following Lourie's request.") (internal citations omitted).

60. By failing to honor Plaintiff's do-not-call request within a reasonable time, Defendant violated the TCPA's "minimum standards" for maintaining a do-not-call list (47 C.F.R. § 64.1200(d).

61. Defendant's failure to honor Plaintiff's do-not-call requests strongly suggests that Defendant also does not meet the other "minimum standards" for the "procedures for maintaining a list of persons who request not to receive" that telemarketers must maintain, such as (1) a written policy for maintaining an internal do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1); (2) informing and training its personnel engaged in telemarking on the existence and use of any internal do-not-call list, as required by Section 64.1200(d)(2); (3) "record[ing] the request and plac[ing] the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made," as required by Section 64.1200(d)(3); and (4) maintain a record of a consumer's request not to receive further calls, as required by Section 64.1200(d)(6).

62. Indeed, it is implausible that Plaintiff would have continued receiving solicitations after a do-not-call request if Defendant maintained these procedures, as it was required to.

63. Defendant's unlawful calls caused Plaintiff and the Class members concrete injury and actual damages, including inconvenience, invasion of privacy, aggravation, annoyance, intrusion upon seclusion, wasted time, consumption of their phone battery and/or data, violation of their statutory privacy rights, and disruption to their personal and daily life as Plaintiff received the unlawful calls inconvenient times, causing Plaintiff to stop to check Plaintiff's phone to confirm they were not for an emergency purpose, and because Plaintiff was forced to spend time investigating the source of the calls and seeking out legal counsel to stop Defendant's harassing solicitations.

64. Based upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all telephone solicitations advertising or promoting its goods and services, which show the dates, times, target telephone numbers, and content of each telephone solicitation made to Plaintiff and the Class members, as well as any stop requests from Plaintiff and the Class members.

Plaintiff Lewis

65. Plaintiff Lewis is the subscriber and customary user of his cellular telephone number (404) XXX-XXXX.

66. Plaintiff Lewis uses, and has at all times used, telephone number (404) XXX-XXXX as his personal residential telephone number.

67. Plaintiff does not use, and at no time has used, telephone number (404) XXX-XXXX for business or commercial purposes.

68. Plaintiff Lewis registered his number on the National Do Not Call Registry on November 21, 2024, at least 30 days prior to receiving the calls at issue.

69. Plaintiff Lewis does not have a landline telephone number in his home or any other telephone number.

70. Plaintiff Lewis uses his cellular phone number for personal use as one would use a landline telephone number in a home.

71. Plaintiff Lewis uses his cellular phone number primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes.

72. Plaintiff Lewis personally pays for his cell phone plan; he is not reimbursed by any business.

73. On April 14, 2025, Plaintiff Lewis received three text messages to his cellular phone number from Defendant.

74. The text messages were received from Caller ID 22462.

75. A screenshot of the text messages is provided below:



76. The subject text messages were intended for someone other than, and unknown to, Plaintiff Lewis.

77. The purpose of the subject text messages was to advertise and market Defendant's business or services.

78. Plaintiff Lewis did not give Defendant prior express consent or permission to deliver, or cause to be delivered, advertisement or marketing text messages to telephone number (404) XXX-XXXX.

79. Plaintiff Lewis did not request information or promotional materials from Defendant.

80. Upon information and good faith belief, Defendant knew, or should have known that telephone number (404) XXX-XXXX was registered with the DNC Registry.

## CLASS ACTION ALLEGATIONS

81. Plaintiffs incorporate by reference all other paragraphs of this Complaint as fully stated herein.

82. Plaintiffs bring this action on behalf of themselves and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

83. Plaintiffs propose the following Class definitions, subject to amendment as appropriate.

Plaintiff Cotson and Plaintiff Lewis:

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant, (3) within a 12-month period,

> (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

Plaintiff Cotson:

> **FTSA DNC Class**: All persons in the State of Florida who, during the period beginning on July 1, 2021, and the date of class certification, (1) received a telephone call or text message (2) from Defendant or on its behalf (3) regarding Defendant's property, goods, and/or services (4) to a telephone number listed on the Florida Do Not Call list maintained by the Florida Department of Agriculture and Consumer Services, (5) when that number appeared in the then-current quarterly listing published by the department.

> **FTSA Autodialer Class**: All persons in the State of Florida who, during the period beginning on July 1, 2021, and the date of class certification, (1) received a telephone call or text message (2) from Defendant or on its behalf (3) regarding Defendant's property, goods, and/or services (4) that was sent using the same equipment or type of equipment used to call Plaintiff, (5) and from whom Defendant does not possess evidence of prior express consent to such calls or texts.

> **TCPA Internal DNC Class**: All persons in the United States who, during the period beginning four years prior to the filing of this action and the date of class certification, (1) received two or more telephone calls or text messages in any 12-month period (2) from Defendant or on its behalf (3) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, (4) after making a request to not receive telephone calls or text messages from Defendant or on its behalf.

84. Plaintiffs are members of and will fairly and adequately represent and protect the interests of the Classes as they have no interests that conflict with any interest of the Class members.

85. Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

86. Plaintiffs and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time,

the use of their telephone power and network bandwidth, the use of their data plans, and the intrusion on their telephone that occupied it from receiving legitimate communications.

87. This Class Action Complaint seeks injunctive relief and money damages.

88. The Classes as defined above are identifiable through Defendant's dialer records, other phone records, and phone number databases.

89. Plaintiffs do not know the exact number of members in the Classes, but Plaintiffs reasonably believes the Class members number, at minimum, in the hundreds.

90. The joinder of all members of the Classes is impracticable due to the size and relatively modest value of each individual claim.

91. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

92. There are numerous questions of law and fact common to Plaintiffs and to the proposed Classes, including but not limited to the following:

(a) Whether Defendant made multiple calls to Plaintiffs and members of the National Do Not Call Registry Class;

(b) Whether Defendant's conduct constitutes a violation of the FTSA;

(c) Whether Defendant's conduct constitutes a violation of the TCPA;

(d) Whether Defendant used an automated system for the selection and dialing of telephone numbers within the meaning of the FTSA to initiate the calls and texts at issue; and

(e) Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

93. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

94. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

95. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**COUNT I**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff Cotson and Plaintiff Lewis and the National DNC Class)**

96. Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1 through 95 as if fully set forth herein.

97. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the Class despite their numbers being on the National Do Not Call Registry.

98. Defendant's violations were negligent, willful, or knowing.

99. As a result of Defendant's violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

100. Plaintiffs and the members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**COUNT II**
**Violation of the FTSA, Fla. Stat. § 501.059(4)**
**(On Behalf of Plaintiff Cotson and the FTSA Florida DNC Class)**

101. Plaintiff incorporates by reference the foregoing allegations in the preceding paragraphs except for the paragraphs in the preceding Counts, as though fully set forth herein.

102. It is a violation of the FTSA for a "telephone solicitor" to "make or cause to be made any unsolicited telephonic sales call to any residential…telephone number if the number for that telephone appears in the then-current quarterly listing [of the Florida DNC] published by the" the Department of Agriculture and Consumer Services. Fla. Stat. § 501.059(4).

103. Defendant at all times relevant was a "telephone solicitor" as defined by Section 501.059(1)(i) because Defendant is an "organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]"

104. At all relevant times, the telephone numbers of Plaintiff and the Class were registered on the Florida DNC Registry.

105. Defendant's calls to Plaintiff and the Class constitute "telephonic sales calls" under the FTSA because they were initiated "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(1)(j).

106. Defendant's calls to Plaintiff and the Class constitute "unsolicited telephonic sales calls" under the FTSA because they were not made (i) in response to an express request of the person called; or (ii) to a person with whom the telephone solicitor has a prior or existing business relationship. Fla. Stat. § 501.059(1)(k).

107. Defendant does business in this state.

108. Thus, Defendant violated Section 501.059(4) of the FTSA.

109. Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

110. Plaintiff and the members of the Class are entitled to injunctive relief to stop Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

111. Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each unsolicited telephonic sales call that Defendant placed in violation of the FTSA. See Fla. Stat. § 501.059(10)(a)(2).

112. Because Defendant knew or should have known that it was placing telephonic sales calls to telephone numbers registered on the Florida DNC without prior express written consent, Defendant's violations of the FTSA were willful or knowing.

113. Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each unsolicited telephonic sales call that Defendant placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

**COUNT III**
**Violation of the FTSA, Fla. Stat. § 501.059(8)(a)**
**(On Behalf of Plaintiff Cotson and the FTSA Autodialer Class)**

114. Plaintiff incorporates by reference and realleges the allegations in the paragraphs above, except for the paragraphs in the preceding Counts, as though fully set forth herein.

115. The FTSA prohibits a person from "mak[ing] or knowingly allow[ing] to be made an unsolicited telephonic sales call if such call involves an automated system for the selection and dialing of telephone numbers…without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

116. As alleged herein, Defendant—or third-parties acting on Defendant's behalf—made or knowingly allowed to be made unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers.

117. Defendant's calls to Plaintiff and the Class constitute "telephonic sales calls" under the FTSA because they were initiated "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(1)(j).

118. Defendant's calls to Plaintiff and the Class constitute "unsolicited telephonic sales calls" under the FTSA because they were not made (i) in response to an express request of the person called; or (ii) to a person with whom the telephone solicitor has a prior or existing business relationship. Fla. Stat. § 501.059(1)(k).

119. Defendant did not obtain "prior express written consent" to place unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers, as required by Section 501.059(8)(a).

120. Defendant does business in this state.

121. Thus, Defendant's unsolicited telephonic sales calls to Plaintiff and the Class violated the Section 501.059(8)(a) of the FTSA.

122. Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

123. Plaintiff and the Class are entitled to injunctive relief to stop Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

124. Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each unsolicited telephonic sales call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

125. Because Defendant knew or should have known that it was using an automated system for the selection and dialing of telephone numbers to place unsolicited telephonic sales calls to Plaintiff and the Class without prior express written consent, Defendant's violations of the FTSA were willful or knowing.

126. Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each unsolicited telephonic sales call that Defendant placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

**COUNT IV**
**Violation of the TCPA, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff Cotson and the TCPA Internal DNC Class)**

127. Plaintiff incorporates by reference and realleges the allegations in the paragraphs above, except for the paragraphs in the preceding Counts, as though fully set forth herein.

128. The TCPA's implementing regulations adopted by the FCC prohibit telemarketers from initiating any call for telemarketing purposes unless they institute certain procedures to ensure do-not-call requests are honored:

> No person or entity shall ***initiate…any call for telemarketing purposes*** to a residential telephone subscriber ***unless*** such person or entity has ***instituted procedures for maintaining a list of persons who request not to receive such calls*** made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d) (emphasis added).

Section 64.1200(d) requires that "[t]he procedures instituted ***must meet*** the following ***minimum standards***:"

> (1) ***Written policy***. Persons or entities making…calls for telemarketing purposes ***must have a written policy***, ***available upon demand***, for maintaining a do-not-call list.
>
> (2) ***Training of personnel***. Personnel…engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) ***Recording, disclosure of do-not-call requests***. If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity ***must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list*** at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) ***must honor a residential subscriber's do-not-call request within a reasonable time*** from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not- call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than

> the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> * * *
>
> (6) ***Maintenance of do-not-call lists.*** A person or entity making…any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(1)-(6) (emphasis added).

129. A violation of Section 64.1200(d) is actionable through 47 U.S.C. § 227(c)(5), which grants a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of [Section 64.1200(d)]." 47 U.S.C. § 227(c)(5).

130. As alleged herein, Defendant—or third-parties acting on Defendant's behalf—initiated, or caused to be initiated on its behalf, more than one telephone solicitation in a 12-month period to Plaintiff and the Class members without instituting the "minimum standards" for "procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity."

131. Specifically, Defendant placed two or more calls for telemarketing purposes to Plaintiff and the Class on their residential line.

132. Defendant's calls to Plaintiff and the Class constitute "telemarketing" under the TCPA because they were initiated "for the purpose of encouraging the purchase or rental of…property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(13).

133. When Plaintiff and the Class received telemarketing calls from Defendant or on its behalf, they made "do-not-call" requests.

134. Defendant failed to "honor [Plaintiff's and the Class members'] do-not-call request within a reasonable time" and continued initiate telemarketing calls to Plaintiff and the Class.

135. By failing to "honor a residential subscriber's do-not-call request within a reasonable time," Defendant failed to meet the required "minimum standard" of Section 64.1200(d)(3).

136. Defendant's failure to honor Plaintiff's repeated do-not-call requests also strongly suggests that Defendant also does not meet the other "minimum standards" for the required "procedures for maintaining a list of persons who request not to receive" telemarketing.

137. Because Defendant does not meet the "minimum standards" of Section 64.1200(d), Defendant violated Section 64.1200(d) every time it "initiate[d] ***any call*** for telemarketing purposes," regardless of whether the recipient made a do-not-call request. 47 C.F.R. § 64.1200(d) (emphasis added).

138. As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

139. Plaintiff and the Class members are entitled to an award of statutory damages of $500.00 for each call that Defendant placed in violation of the TCPA. *See* 47 U.S.C. § 227(c)(5)(B).

140. Because Defendant knew or should have known that it was initiating calls for telemarketing purposes without instituting the "minimum standards" for the "procedures for

maintaining a list of persons who request not to receive such calls" required by Section 64.1200(d), Defendant's violations of the TCPA were willful or knowing.

141. Thus, Plaintiff and the Class members are entitled to an award of treble statutory damages of $1,500.00 for each call that Defendant placed in knowing or willful violation of the TCPA. *See* 47 U.S.C. § 227(c)(5)(C).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages for each violation of the TCPA and FTSA and trebling those damages for all conduct found to be knowing or willful;

B. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

C. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: July 5, 2025

PLAINTIFF,
By their attorneys,

By: */s/ Leland McRae*
Leland Garrett McRae
State Bar No. 24086374

1150 N. Loop 1604 W, Ste. 108-461
San Antonio, Texas 78248
(248) 420-4042
(210) 493-6080 (fax)
leland@lelandmcrae.com

Anthony Paronich
**Paronich Law, P.C.**
350 Lincoln St, Suite 2400
Hingham, MA 02043
Phone: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com
*Subject to Pro Hac Vice*

Attorney for Plaintiffs